# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ROGER WALSH,               )
                             )
            Plaintiff,     )
                             )
v.                            )        **Civil Action No. 5:10-0463**
                             )
DAVID BERKEBILE, Warden, *et al.*,   )
                             )
            Defendants.    )

### PROPOSED FINDINGS AND RECOMMENDATION

On May 7, 2010, Plaintiff, an inmate formerly incarcerated at FCI Beckley,[1] and acting *pro se*, filed his Application to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] (Document Nos. 1, 5 - 7, 15.) Plaintiff names the following as Defendants: (1) David Berkebile, Warden of FCI Beckley; and (2) A. Hussin, Chief of Investigations. (Document No. 7.) Plaintiff alleges that Defendants violated his constitutional rights by placing him in segregation, denying him placement in a halfway house, and refusing to prosecute a fellow inmate. (Id.) Plaintiff complains that he has been held in administrative segregation since December 22, 2009. (Id., p. 8.) Plaintiff asserts that he and his former cell-mate, Dustin Johnson, "had problems since the day he moved into my cell." (Id.) Plaintiff explains that "our disagreements finally climaxed on December 21, 2009" and "I told

---

[1] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on July 16, 2010.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Dustin Johnson that he had to get out and move into someone else's cell." (Id.) On December 22, 2009, Plaintiff was "charged with threatening Dustin Johnson and placed in the SHU." (Id.) Approximately one week after the incident, Plaintiff was visited by Case Manager Locant and Counselor Davis. (Id.) Plaintiff alleges that he was scheduled to be placed in a halfway house on March 30, 2010, and "I was told by both men to not get into anymore trouble and that my release date would not change." (Id.) Plaintiff states that Case Manager Locant and Counsel Davis "told me that if I didn't pled guilty that an investigation would be conducted that would probably take months and I would remain in the SHU the entire time." (Id., pp. 8 - 9.) Plaintiff claims that prison officials refused his request to speak to his attorney, James P. McLoughlin, Jr.[3] (Id., p. 9.) Plaintiff acknowledges that he went before the Disciplinary Hearing Officer [DHO] on January 12, 2010, and testified in his own defense. (Id.) The DHO allegedly informed Plaintiff that "he would suspend [Plaintiff's] sentence and release him back to the compound." (Id.) Plaintiff explains that the DHO "went to release me back to the compound and was notified by SHU personnel that I had a 'seperatease' filed against me. . .and the [DHO] said that this was overkill and that I could get with my Case Manager and easily have this removed."[4] (Id.)

---

[3]   The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. *Id.*, at 563 - 66. The undersigned notes that Plaintiff does not allege he was denied any of the above procedural safeguards.

[4] Plaintiff explains that a "seperatease means that me and Dustin Johnson cannot be on the same yard or compound." (Document No. 7, p. 9.)

Approximately one week later, Plaintiff was informed by his Case Manager that "Dustin Johnson had written a letter to a U.S. Attorney in Virginia telling them that when [Plaintiff] was released, he was plotting to kill several people including government officials." (Id., p. 10.) On March 5, 2010, Case Manager Locant informed Plaintiff that his "halfway house placement had been taken away." (Id., p. 11.) Plaintiff alleges that "[t]hrough out this entire process I have repeatedly requested, both written and orally, to contact my attorney." (Id.) Plaintiff alleges that he was interrogated on March 17, 2010, by Defendant Hussin, a FBI Agent from Beckley, and a U.S. Marshall from Charlotte, N.C. (Id.) Defendant Hussin allegedly told Plaintiff "that he had taken [Plaintiff's] halfway house and that he could give it back." (Id., p. 12.) Plaintiff states he was later informed by Defendant Hussin that "when the FBI Agent called regarding [Plaintiff's] case, that he would release [Plaintiff] to a halfway house. He stated that [Plaintiff's] case was 90% BS and not to worry. He said that he had seen it a whole lot worse than [Plaintiff's] case and he knew more about my case than the FBI, and there was no case against [Plaintiff]." (Id., p. 12.) Plaintiff acknowledges that he was allowed to call his attorney on April 8, 2010. (Id.) On April 23, 2010, the FBI allegedly finished their investigation. (Id., pp. 14 - 15.) Plaintiff complains that he "still remains in the SHU and no action has been taken against Dustin Johnson for his false claims." (Id., p. 14.) Plaintiff states that "[b]ecause of my continued incarceration past March 30th, I have lost a job with Johnson Oil Company in North Wilkesboro, N.C, that I had already secured upon my release to the halfway house." (Id.) Plaintiff requests the following relief: (1) "immediate release to home confinement;" (2) "prison immediately comply with my meritorious claims seeking medical, dental, attorney calls, and other things that I am currently being denied;" (3) "FCI-Beckley reimburse any and all fees and expenses through any litigation;" and (4) "payment from March 30, 2010, of an

3

appropriate fee for my continued incarceration."[5] (Id., pp. 15 - 16.)

In support, Plaintiff attaches the following Exhibits: (1) A copy of a letter addressed to Defendant Hussin from Attorney James P. McLoughlin, Jr., dated April 23, 2010 (Id., pp. 17 - 18.); (2) A copy of a letter addressed Warden Craig from Attorney James P. McLoughlin, Jr., dated March 30, 2010 (Id., p. 19.); (3) A copy of a letter addressed to Attorney James P. McLoughlin, Jr., from Defendant Berkebile dated March 20, 2010 (Id., p. 19.); (4) A copy of a letter addressed to Attorney James P. McLoughlin, Jr., from Defendant Berkebile dated April 15, 2010 (Id., p. 20.); and (5) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated April 19, 2010 (Id., p. 21.).

On June 1, 2010, Plaintiff filed a letter-form Motion to Amend and his Amended Complaint. (Document Nos. 19 and 20.) In his Amended Complaint, Plaintiff includes Lieutenant Santiago as a Defendant. (Document No. 20.) Plaintiff includes additional facts supporting his claim that he is being improperly held in segregation and Defendants are improperly denying him halfway house placement. (Document No. 19.) Plaintiff states that Defendants continue to house him in the SHU. (Id., p. 1.) Plaintiff complains that "the saying 'lock you up and throw away the key' is a very literal correct statement." (Id.) Plaintiff states that he is currently without medication for his acid reflux and "bladder, prostrate, hypertension."[6] (Id.) Next, Plaintiff asserts that he has "been given a release date

---

[5] To the extent Plaintiff is seeking injunctive relief, his claims are rendered moot by his release from custody.

[6] To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff, however,

4

of 7-17-10, which [he] feels is incorrect." (Id.) Finally, Plaintiff states that he is "afraid that prison officials might place more charges on me, place a 'shank,' drugs, or any other numerous things they have more charge on him." (Id., pp. 1 - 2.) Plaintiff requests that he be "moved to another Federal Correctional institution immediately where I can receive the medical and dental treatment that I desperately need, have contact with my attorney, and not live in fear of retaliation or harm from my 'jailers.'"[7] (Id., p. 2.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails

---

fails to allege that Defendants knew of and disregarded an excessive risk to his health or safety. Further, there is no indication in Plaintiff's Complaint that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, or that Defendants drew that inference. Accordingly, the undersigned finds that Plaintiff's allegations cannot be construed to implicate a constitutional right for the violation of which relief can be granted under *Bivens*.

[7] By separate order entered this day, the undersigned has granted Plaintiff's Motion to Amend.

to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[8] The United States Supreme Court has held that an inmate may name a federal

---

[8] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472-74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted

officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.      **Exhaustion.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[9] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121

---

that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

[9] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate

8

eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

9

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy

requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

The record reveals that Plaintiff submitted an informal "Inmate Request to Staff" concerning his claim that he was being held in "Special Housing-Administrative Detention with loss of halfway house and no charges." (Document No. 7, p. 21.) Plaintiff's informal "Inmate Request to Staff" was denied on April 23, 2010. (Id.) Approximately two-weeks later, Plaintiff filed his Complaint with this Court. (Id., p. 1.) In his Complaint, Plaintiff indicates that his BP-9 is currently pending.[10] (Id., p. 3.) Plaintiff appears to contend that prison staff failed to properly respond to his administrative remedy requests. (Id., pp. 3 and 14.) Specifically, Plaintiff complains that the administrative remedy process is "broken" because "it took 2 months for a 1 week response." (Id.) Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. Upon receiving the denial of his informal request, Plaintiff filed his BP-9 and Complaint. The record reveals that Plaintiff filed his Complaint approximately two-weeks after receiving the denial of his informal request.[11] Thus, Plaintiff filed his Complaint prior to submitting his claims properly through the BOP's administrative remedy process. Because Plaintiff failed to

---

[10]  Plaintiff states that he "filed a BP-8 ½ Administrative Remedy; now filed a BP-9." (Document No. 7, p. 3.)

[11]  At the time Plaintiff filed his Complaint, the allotted time for receiving a response to the BP-9 had not expired. See 28 C.F.R. § 542.18.

properly exhaust administrative remedies with respect to his claims in this matter, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed. Notwithstanding Plaintiff's failure to exhaust, the undersigned will consider the merits of his claims.

**2.      No Due Process Violation.**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

*(a)      Liberty Interest in Placement into General Population*:

Applying the principles set forth in Sandin, the undersigned finds Plaintiff's placement in

segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, he does not complain that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[12] Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty

-------

[12] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

interest); and Slezak v. Evatt, 21 F.3d 590, 594 (4ᵗʰ Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. To the extent Plaintiff complains that Defendants misapplied the prison's policies concerning segregation, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned finds that Plaintiff's claim is without merit.

   (b)    *Liberty Interest in Halfway House Placement:*

   Federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any

particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .  And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Neither Section 3621(b) nor Section 3624(c) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. See 18 U.S.C. § 3621. See also Trowell v. Beeler, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). The language of Section 3621(b) stating that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility. Furthermore, Title 18 U.S.C. § 3624(c) "does not direct that the BOP must place prisoners in a particular facility, such as a halfway house, to achieve these 'pre-release conditions.' Rather, pursuant to § 3621(b), and subject to the § 3624 limitation periods, the BOP retains discretion to determine whether the pre-release

conditions or programs will be provided within a BOP facility or within a community confinement setting." Bost v. Adams, 2006 WL 1674485 (S.D.W.Va. Jun 12, 2006)(finding that petitioner "does not possess a statutorily created liberty interest in release to community confinement"); also see Pennavaria v. Gutierrez, 2008 WL 619197, * 9 (N.D.W.Va. Mar. 4, 2008)(stating that federal prisoners do not have a protected liberty interest in being placed on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release confinement). Accordingly, the undersigned finds that Plaintiff does not possess a constitutionally protected interest in halfway house placement.

3.    **Retaliation.**

Plaintiff asserts that Defendants have held him segregation and denied halfway house placement in retaliation for Plaintiff filing the instant action. The Fourth Circuit has held that an inmate's claims of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

To the extent that Plaintiff alleges retaliation in response his filing of a civil rights action, the undersigned will find that he has satisfied the first part of the analysis. "The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent,

16

exist in a prison setting." Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 ** 2 (4th Cir. (Md.) Feb.

21, 1989)(unpublished)(citing Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718

(1969)). Plaintiff has not, however, demonstrated that his reclassification and denial of halfway

house placement was motivated in any manner by his filing of complaints. The showing of adversity

is an essential element to any retaliation claim. See American Civil Liberties Union v. Wicomico

County, 999 F.2d at 785. In his Complaint, Plaintiff acknowledges he was placed in segregation

following an incident where he allegedly threatened his former cell-mate. Additionally, Plaintiff

alleges that his halfway house placement was taken because he was being investigated for plotting

to kill government officials upon his release from custody. The undersigned finds that the record

clearly establishes that the change of Plaintiff's status and denial of halfway house placement were

based upon legitimate, nonretaliatory reasons. Therefore, Plaintiff's bare assertions of retaliation do

not establish a claim of constitutional magnitude.[13]

## 4.    Failure to Prosecute.

Finally, Plaintiff complains that Defendants failed to prosecute Dustin Johnson for "his false

claims against me, his theft of my property, and lying to prison officials." (Document No. 7, p. 14.)

It is well established, however, that "a private citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct.

1146, 35 L.Ed.2d 536 (1973). Thus, Plaintiff has no right to initiate criminal proceedings against

Dustin Johnson. Young v. Herald, 2005 WL 1048117, * 8 (E.D.Ky.)(stating that the authority to

initiate criminal complaints rests exclusively with state and federal prosecutors); Kennedy v.

---

[13]   The undersigned notes that Plaintiff appears to be alleging the possibility of future
retaliation. Plaintiff states that he fears false charges will be issued to extend his projected release
date of July 17, 2010. Plaintiff, however, was released from custody on July 16, 2010.

Anderson, 373 F.Supp 1345, 1346 (E.D.Okl. 1974)(stating that any charge brought under 18 U.S.C. § 242 "may only be initiated by a federal grand jury or a United States Attorney"); and Dixon v. State of Maryland, 261 F. Supp. 746 (D.Md. 1966)(Prisoner could not institute criminal proceedings against a State or its officers for violation of his rights under the color of law). Furthermore, the Court does not have the authority to direct that an individual be prosecuted. See United States v. Batchelder, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979)(stating that the decision whether to prosecute and what charges to file rest in the prosecutor's discretion); Inmates of Attica Correctional Facility v. Rockefeller, 447 F.2d 375 (2nd Cir. 1973)(finding that the authority to investigate and initiate criminal complaints rest exclusively with the United States Attorney). Based on the foregoing, the undersigned finds that Plaintiff's request that criminal proceedings be initiated against a fellow inmate should be denied.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (Document Nos. 5 and 15.), **DISMISS** Plaintiff's Complaint (Document Nos. 1, 7, and 19.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: February 22, 2011.

R. Clarke VanDervort
United States Magistrate Judge